IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AHMEEK DAVIS, Sr.,<br><br>                  Petitioner,<br><br>      vs.<br><br>MICHAEL SHEAHAN, Superintendent,<br>Five Points Correctional Facility,[1]<br><br>                  Respondent. | No. 9:12-cv-00842-JKS<br><br>MEMORANDUM DECISION |

Ahmeek Davis, Sr., a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Davis is currently in the custody of the New York State Department of Corrections and Community Supervision and is incarcerated at Five Points Correctional Facility. Respondent has answered, and Davis has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On June 21, 2008, Davis was charged with criminal possession of a weapon in the second degree and criminal possession of a controlled substance in the third and fourth degrees.

On direct appeal of his conviction, the Appellate Division summarized the facts underlying Davis's indictment:

> At approximately 1:00 p.m. on June 21, 2008, Police Officer Edward Markham was on patrol and received a transmission from a City of Albany Police Department dispatcher indicating that a black male had exited the passenger seat of a late model white Ford Mustang and pointed a handgun at a group of people standing in the vicinity of Dana Avenue and Knox Avenue in the City of Albany. Markham was also informed

---

[1] Michael Sheahan, Superintendent, Five Points Correctional Facility, is substituted for Harold D. Graham, Superintendent, Auburn Correctional Facility. FED. R. CIV. P. 25(c).

by the dispatcher that the black male had fled the scene in the vehicle, which was being driven by another black male.  Moments later, Markham received another radio transmission, this time from a police officer on patrol in a nearby area, that the officer was in pursuit of a late model white Ford Mustang that fit the description of the vehicle given in the initial radio dispatch.  Markham joined the pursuit and, coming upon the vehicle, attempted to initiate a traffic stop.  The driver of the Ford Mustang refused to comply and continued driving two blocks before stopping the vehicle in the middle of the street.  At that time, the passenger—a black male who fit the description given in the radio dispatch— suddenly jumped out of the vehicle and fled.  While other police officers pursued the passenger, Markham approached the Ford Mustang, took the driver into custody and recovered a .22 caliber handgun and several rounds of ammunition that were on the front passenger seat.  [Davis] was apprehended by the other police officers a short distance from the scene and, moments later, was identified by Markham as the passenger of the vehicle who had fled the area.  [Davis] was arrested and approximately seven grams of crack cocaine was recovered from his person.  Later that day, a witness, during a photographic array conducted by the police, identified a photograph of [Davis] as the individual who had brandished the handgun on the street.

Davis moved to suppress the cocaine recovered from his person as well as the eyewitness's identification.  On November 26, 2008, a combined suppression hearing was held pursuant to *Dunaway v. New York*, 442 U.S. 200 (1979), to determine whether the police had probable cause to arrest Davis, and *United States v. Wade*, 388 U.S. 218 (1967), to determine the admissibility of the showup identification.  At the conclusion of the hearing, the trial court denied Davis's suppression motions:

> [Davis] claiming improper identification testimony may be used against him, has moved to preclude pretrial as well as the prospective in-court identification of Melody VanAlstyne that such identification is not constitutionally proper.
> People have the burden of going forward to demonstrate that the pretrial ID was not constitutionally impermissible.
> [Davis], however, bears the burden of establishing by a preponderance of evidence that the procedure was impermissible.  Defense also argues that there was not probable cause to take his client into custody and seizure of any property from him, any subsequent identifications, should be declared fruit of the poisonous tree.
> We've heard from four witnesses whose testimony I give full credence to.  Police Officer  Edward Markhum was on duty on the 21st day of June about one p.m. when he heard a radio call indicating a new white Mustang in the area of Dana and Knox; that two black males were in the vehicle and one of the occupants got out and pointed a gun at a person on the porch on that street and that he was in a different area of the city down on

Broadway in lower Arbor Hill.  And that he shortly thereafter heard a broadcast from Officer Van Garderen that he encountered a vehicle at Henry Johnson and Washington Avenue, the other side of Washington Park from where this incident was alleged to have occurred; that he, that is Markham got involved in following this car and once he realize[d] there were two cars in line they tried to do a traffic stop at which point the car took off in essence and when it got to the area of Henry Johnson and Sheridan the passenger jumped out and ran northbound on Henry Johnson Boulevard.

Markham himself and Van Garderen took into custody the driver of that vehicle who stayed with the car.  He indicated that he viewed the passenger for about ten seconds in the car in the process of leaving; that five to eight minutes later he went to the area of the rear of 98 Henry Johnson Boulevard where [Davis] was then being held.  He ID'd him as the same person he saw leaving the newer model white Mustang and running north on Henry Johnson Boulevard and he indicated on the passenger seat which [Davis] had vacated when he approached the car he found a .22 caliber handgun and bullets.

Detective Alfred Martin indicated he was down at the police station later that same day an hour or so later and at the direction of one of the supervisors put together a photo array from a system that the Albany Police Department calls the RICI system; that he took what he said was the most recent photograph they had of [Davis] on file and from that matched [Davis] with five other individuals and prepared an array which was going to be shown to a potential ID witness.

Detective William Van Amburgh indicated that he also was involved in this situation of the menacing that occurred on Dana Avenue and that shortly before three he was interviewing a Melody Van Alstyne and after taking a statement from her, he showed to her what was admitted into evidence as the first of three pages of People's Exhibit one and that's a photo array which includes a photograph of [Davis].  He told her that the person that she encountered on Dana Avenue may or may not be there.  The photograph may not be recent but if you do recognize someone, please tell me who it is and from where you recognize them.

She studied this for about a minute and picked out the photograph of [Davis] as the individual she had encountered just a couple hours earlier on Dana Avenue.  Parenthetically the photograph of [Davis] as shown to Van Alstyne does not have braids and Van Alstyne had to indicate that the person that had done this had braided but in terms of the fairness concept in terms of this array, none of the people have braids.

And the last witness was Officer Hsu.  He indicated that he also was involved in the chase of this vehicle and after the car stopped and [Davis] took off.  He was in a foot chase and he caught up with him a few blocks later in the rear of 98 Henry Johnson Boulevard.  This was the same person that had taken off from the vehicle.

Based on the forgoing, first I find the People have demonstrated that the identification procedure utilized here was in all respects constitutionally permissible.

When you look at this array, there is no indication that you pick out one person vs. another.  The comparison of photos of those five individuals would not lead someone to say okay, automatically it's [Davis] was the one that they were looking to inquire about.

The words and methods utilized by VanAmburgh were neutral indicating the person may or may not be here, may not be a recent photo. Just look at them. Tell me if you recognize them. Certainly that is a neutral process and procedure and it meets constitutional muster.

And the People have born the burden of proof by the appropriate level of proof and to demonstrate that this procedure was constitutionally permissible.

The question then becomes were the police in terms of the actions they took were taking actions commensurate with information they had.

There was a police broadcast that two black males in a new white Mustang in the area of Dana and Knox, that one of the individuals that exited the car pointed a gun at a person on a porch and it's contemporaneously with that or very shortly thereafter but before any confrontation with the car, a further description is given of one of the individuals; white tee shirt, blue jeans and braided hair.

Van Garderen after this radio transmission is put out, finds a vehicle matching the description. He then broadcasts that. Other officers join in.

When a vehicle and traffic stop is attempted, the vehicle in which [Davis] is a passenger takes off. There is a police chase and at the end of the chase when the car stops, [Davis] then takes further activity by taking off and running. It's only after a foot chase that he's taken into custody.

One of the police coming to the vehicle before the end of the foot chase, from the seat in the vehicle from which [Davis] had just exited was found a .22 caliber handgun and certain ammunition.

Based upon the forgoing, it being a continuing analysis that's necessary, did the police with the information they had at the continuing levels take action commensurate with the information they had? Did they have the right to stop that vehicle to just check it out given the fact that somebody pointed a weapon in broad daylight here in the City of Albany some eight, ten blocks away? Certainly they did. To do anything less would have been a dereliction of their duties.

When this information is then exacerbated by a vehicle chase, certainly the police must process that information. When that situation is exacerbated by one of the occupants from the vehicle that was being chased takes off knowing that the police are chasing him, the situation is then further exacerbated. It's further exacerbated by finding a gun and bullets on the seat from the very chair from which [Davis] had exited.

Based upon the forgoing, I find the People have demonstrated that there was an appropriate level of information to justify each of the actions they took including placing [Davis] in custody when he was finally stopped and confronted in the rear yard of 98 Henry Johnson Boulevard and accordingly, after careful consideration of [Davis's] motions, at this point they are in all respects denied.

Davis, represented by counsel, appeared in court to plead guilty on January 5, 2009. The prosecution agreed to allow Davis to plead guilty to the first count of the indictment, criminal possession of a weapon in the second degree, in full satisfaction of the indictment with the

understanding that the court would impose a sentence of 9½ years of imprisonment plus 3 years of post-release supervision. Davis would waive his right to appeal his sentence and all other issues, but would expressly retain the right to appeal the suppression hearing ruling.

After Davis was sworn, the court engaged in an extensive colloquy with Davis where he stated, *inter alia*, that he had sufficient time to speak with his attorney and family, was satisfied with his attorney, and was pleading guilty freely and voluntarily. He further acknowledged that he understood and agreed that, by pleading guilty, he was waiving his rights to remain silent, to have the prosecution prove his guilt beyond a reasonable doubt, to confront the prosecution's witnesses and to call witnesses on his own behalf, and to appeal all issues other than the suppression ruling. Davis then pled guilty to second-degree criminal possession of a weapon.

On February 23, 2009, Davis appeared with counsel for sentencing. The court adjudicated Davis a second felony offender based on a prior conviction of criminal sale of a controlled substance in November 2003. The trial judge agreed that, as part of the plea agreement, he would not sentence Davis as a persistent felony offender. The court then sentenced Davis to 9½ years of imprisonment and 5 years of post-release supervision. *See* N.Y. PENAL LAW § 70.45(2) ("The period of post-release supervision for a determinate sentence . . . shall be five years.").

On July 14, 2009, Davis, proceeding *pro se*, moved to set aside the sentence pursuant to New York Criminal Procedure Law ("CPL") § 440.20, contending that the Department of Corrections and Community Supervision had administratively changed his term of post-release supervision from 3 years, as discussed during the plea agreement, to 5 years. According to

Respondent, the motion was denied on November 19, 2009, and Davis did not seek leave to appeal the denial of the motion.

Davis, again represented by counsel, then directly appealed his conviction. He argued that: (1) the prosecution failed to establish probable cause for his arrest; (2) evidence obtained as a result of his unlawful arrest should have been suppressed; (3) the prosecution failed to establish an independent source for the civilian witness's prospective in-court identification; (4) the prosecution was not entitled to a rehearing of the suppression issues; and (5) the court erred in sentencing Davis to a 5-year period of post-release supervision where the plea agreement called for a period of only 3 years.

The Appellate Division affirmed the judgment in a reasoned opinion. The appellate court determined that the police had probable cause to arrest Davis and thus the hearing court properly denied his motion to suppress. With respect to Davis's sentencing claim, the court stated, "While the term of postrelease supervision imposed by County Court did not 'conform to the term indicated at the plea proceeding,' [Davis] did not object to the sentence as imposed as has not preserved this claim by seeking appropriate relief before the sentencing court." It further concluded, "[Davis's] status as a second felony offender required that a five-year term of postrelease supervision be imposed as part of his sentence." Davis sought leave to appeal the denial to the New York Court of Appeals on the ground that the police did not have probable cause to arrest him. The Court of Appeals summarily denied the request on February 25, 2011. Davis timely filed a Petition for a Writ of Habeas Corpus to this Court on May 18, 2012.

## II. GROUNDS RAISED

In his *pro se* Petition, Davis raises three grounds for habeas relief. First, Davis argues that the prosecution failed to establish probable cause for his arrest. Davis likewise contends that the civilian witness's identification, the showup identification by a police officer, and drugs found in his possession should have been suppressed because they were obtained as a result of the unlawful arrest. Finally, Davis argues that the trial court erred in sentencing him to a 5-year period of post-release supervision when he was promised through his plea agreement that the period would be limited to 3 years.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was

## II. GROUNDS RAISED

In his *pro se* Petition, Davis raises three grounds for habeas relief. First, Davis argues that the prosecution failed to establish probable cause for his arrest. Davis likewise contends that the civilian witness's identification, the showup identification by a police officer, and drugs found in his possession should have been suppressed because they were obtained as a result of the unlawful arrest. Finally, Davis argues that the trial court erred in sentencing him to a 5-year period of post-release supervision when he was promised through his plea agreement that the period would be limited to 3 years.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was

correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Davis has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66-67 (2d Cir. 1952) (per curiam).

IV. DISCUSSION

*Fourth Amendment Claims* (Claims 1 and 2)

In claim 1, Davis contends that the prosecution failed to establish probable cause for his arrest because "the only witnesses at the sup[p]ression hearing were police officers who relied on

8

radio communication from the dispatcher." He argues that "[t]he dispatcher did not testify at the suppression hearing and there was no other evidence put forth on the source of the information that prompted the radio call." Davis similarly argues in claim 2 that certain evidence should have been suppressed because it was obtained as a result of the unlawful arrest. He recognizes that claim 2 is "[p]redicated on the finding that the [P]eople failed to establish probable cause" and thus relief on claim 2 requires this Court to find in his favor on claim 1.

However, both of Davis's claims are waived by the entry of his guilty plea. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Moreover, neither claim is cognizable before this Court on federal habeas review because these arguments are precluded by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. *Id.* at 482. The Second Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983).

In order to receive habeas review of his Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and thus is insufficient to give this

9

Court authority to review Fourth Amendment claims. *Id.* at 72. That New York has in place such procedures is well-settled, *see id.* at 70 & n.1, and Davis has not asserted the existence of an unconscionable breakdown of that process in this case. Accordingly, Davis is not entitled to relief on either of his Fourth Amendment claims.

### *Sentencing Claim* (Claim 3)

Davis additionally argues that the trial court erred in sentencing him to 5 years of post-release supervision when the plea agreement called for only 3 years. Pet. at 5. Davis contends that "[t]he court denied [him] his right to due process and equal protection under the law when it failed to renegotiate [Davis's] plea upon discovery that the original plea agreement did not comply with the statute requiring a mandatory term of five years post-release supervision." *Id.*

As Respondent notes, Davis did not raise this claim fully to the state courts. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). While Davis raised this claim to the Appellate Division, he did not raise it when he applied to the Court of Appeals for leave to appeal the Appellate Division's denial.

Respondent further contends that the claim may be deemed exhausted but procedurally barred because he has no state-court forum in which to raise the claim. *See Ramirez v. Att'y*

*Gen.*, 280 F.3d 87, 94 (2d Cir. 2001). Davis cannot now raise this claim on direct appeal because he has already filed the direct appeal and leave application to which he is entitled. *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991). Respondent argues that Davis cannot bring this claim on a post-conviction motion either because he raised the claim on direct appeal, and the Appellate Division determined the claim. *See* N.Y. CRIM. PROC. LAW § 440.20(2) (a "court must deny such a motion when the ground or issue raised thereupon was previously determined on the merits upon an appeal from the judgment or sentence, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue").

However, Davis argued in his counseled brief on appeal only that "[t]he Judge below clearly made a mistake in sentencing [Davis] to five years post release supervision when the plea agreement called for three years post release supervision." Ex. B at 16. Construing his *pro se* Petition liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), it appears that the gravamen of Davis's federal Petition is that his plea was not voluntary because he was not adequately informed of the consequences of his plea. As the Appellate Division recognized, the 5-year sentence of post-release supervision was mandatory under state law. The thrust of Davis's problem therefore is not that the term of supervised release is part of his sentence but rather that he was never properly advised that he would be subject to 5, rather than 3, years of post-release supervision.

When a court takes a plea of guilty from a defendant on the promise of a determinate sentence, the court is required to also advise the defendant of the applicable post-release supervision period; under New York law, failure to do so entitles the defendant to withdraw the

11

plea of guilty.  *People v. Louree*, 869 N.E.2d 18, 21 (N.Y. 2007); *People v. Catu*, 825 N.E.2d 1081, 1082-83 (N.Y. 2005).  Under New York law, that is a matter that can be raised in the trial court at any time by a motion pursuant to CPL § 440.10.  *See People v. Seaberg*, 74 N.Y.2d 1, 10 (N.Y. 1989) ("a defendant always retains the right to challenge the legality of [his] sentence or the voluntariness of his plea").  Although Davis brought a CPL § 440.20 motion to set aside the set sentence on a somewhat similar premise, Davis has not raised a voluntariness of plea claim on a CPL § 440.10 motion, and it therefore appears that this avenue of relief is still available to him.  Although this Court has the authority to stay the petition to allow Davis to return to state court to satisfy the exhaustion requirement as to that remaining claim, *see Zarvela v. Artuz*, 254 F.3d 374, 380-83 (2d Cir. 2001), Davis has not asked this Court to stay its judgment, and the Court will accordingly not address that option.

The Second Circuit has held that "the only remedies available for breach of a plea agreement are enforcement of the agreement or affording the defendant an opportunity to withdraw the plea."  *1-95-CV-553-P1 v. 1-95-CV-443-D1*, 75 F.3d 135, 136 (2d Cir. 1996).  Where the sentence called for by the plea agreement is unlawful, however, courts have generally held that the only available remedy is rescission of the agreement and withdrawal of the plea.  *See, e.g.*, *United States v. Greatwalker*, 285 F.3d 727, 729 (8th Cir. 2002) (even when a defendant, prosecutor, and court agree on a sentence, the court cannot give the sentence effect if it is not authorized by law, and any plea to such illegal sentence is void).  Although the record indicates that Davis bargained for a term of 3 years of post-release supervision, such a sentence would have been illegal under New York law, and a federal court would have no authority to specifically enforce such a bargain.  It therefore appears that for Davis to achieve remedy for any

violation of his rights, he must first present his claim to the state courts through a CPL § 440.10 motion seeking permission to withdraw his plea of guilty and exercise his right to a trial by jury.

V. CONCLUSION

Davis is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: March 24, 2014.

                                                /s/ James K. Singleton, Jr.
                                                 JAMES K. SINGLETON, JR.
                                              Senior United States District Judge